UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MEGHAN BREWER, ET AL.,

    Plaintiffs,

v.

CITY OF FLINT, ET AL.,

    Defendants.

                                   /

Case No. 20-10315

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [20]**

The instant action arises out of the January 2019 execution of a search warrant at the home of Plaintiffs, Meagan Brewer and Travis Copeland, by Defendants, City of Flint Police Officers Terry VanKeuren, Jr., Kristin Jones, Randy Matteson, Keith Urquhart, Dion Reed, Karl Petrich, and Nick White. (Sec. Am. Compl.). Plaintiffs bring several Fourth Amendment claims against the officers, as well as a claim for municipal liability against the City of Flint. (*Id.*). Defendants have moved to dismiss. (ECF No. 20). The Court held a hearing on Defendants' Motion [20] on July 22, 2021. For the reasons articulated below, Defendants' Motion [20] will be **GRANTED in part and DENIED in part**. The Motion [20] is **GRANTED** insofar as Count III(b) of Plaintiffs' Second Amended Complaint [46] is **DISMISSED** as to

all Defendants except VanKeuren and Matteson, and Plaintiffs' claims against the City of Flint are **DISMISSED** entirely. The Motion [20] is **DENIED** in all other respects.

## FACTUAL BACKGROUND

On or about January 4, 2019, Plaintiffs were driving in the City of Flint when they were pulled over by Officers Reed and Jones. (Sec. Am. Compl. ¶ 9). Despite Plaintiffs' compliance, Officers Reed and Jones pulled Plaintiffs from their vehicle, handcuffed them, and put them in the back of a police car. (*Id.* ¶ 10). Officers VanKeuren and Matteson, who were also present, did not intervene, and, in fact, may have directed Officers Reed and Jones to detain Plaintiffs. (*Id.* ¶ 11).

Following the traffic stop, Officers Reed and Jones brought Plaintiffs to their home and directed them to secure their dog. (*Id.* ¶ 12). Plaintiffs' vehicle, driven by Officer VanKeuren or Matteson, arrived separately. (*Id.*). At some point, Officers Urquhart, White, and Petrich also arrived at Plaintiffs home. (*Id.* ¶¶ 13-15). Once Plaintiffs' dog was secure, the officers began repeatedly asking Plaintiffs "where the drugs were." (*Id.* ¶ 13). Plaintiffs stated that there were no drugs. (*Id.*). The officers responded by telling Plaintiffs that their house would be torn apart and their daughter taken away if they did not divulge the location of the drugs. (*Id.* ¶ 14). While Plaintiffs were handcuffed on their living room couch, the officers made good on the first part of their threat: They broke Plaintiffs' home security system, destroyed

Plaintiffs' clothes and furniture, clogged Plaintiffs' drains, broke Plaintiffs' dishes and cupboards, and spoiled Plaintiffs' food. (*Id.* ¶ 15). At some point during the course of the search, Officer White "came out of nowhere and punched [Plaintiff Copeland] in the face," even though he was seated and in handcuffs. (*Id.* ¶ 16).

Despite the officers' efforts, they found nothing illegal in Plaintiffs' home. (*Id.* ¶ 17). Nevertheless, Plaintiffs were arrested by Officers VanKeuren and Matteson and taken to jail, where they were detained for approximately three days. (*Id.* ¶ 18). No charges were ever brought against Plaintiffs. (*Id.* ¶ 19).

The warrant authorizing the search of Plaintiffs' home was based on an affidavit by Officer VanKeuren. (ECF No. 20-1). In support of the warrant, Officer VanKeuren alleged that he was informed that Plaintiffs' residence was "a location from which narcotics could be purchased" by a "credible and reliable" confidential informant, who, over the prior month, "ha[d] been involved in a number of successful controlled purchases, . . . [and had] relay[ed] information leading to the discovery of confirmed controlled substances." (*Id.* at 716). Officer VanKeuren further alleged that he and other officers conducted surveillance on Plaintiffs' residence while the confidential informant made a controlled purchase, and that, while they were there, they "observed large amounts of foot [and vehicle] traffic com[ing] to and leaving the residence." (*Id.*). Finally, Officer VanKeuren alleged

3

that the "substance was . . . field-tested by Officer Randy Matteson" and tested positive for methamphetamine. (*Id.*).

Plaintiffs contend that the confidential informant ("CI") did not purchase drugs at their home and that Officers VanKeuren and Matteson "falsely represented to the contrary in order to obtain the search warrant." (Sec. Am. Compl. ¶¶ 21-24).

## STANDARD OF REVIEW

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) seeks to dismiss a complaint for failure to state a claim. To survive such a motion, the plaintiff "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Detailed factual allegations" are not strictly necessary, "but the complaint must contain more than conclusions and an unsubstantiated recitation of the necessary elements of a claim." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012). The Court "assume[s] the veracity of well-pleaded factual allegations and determine[s] whether the plaintiff is entitled to legal relief as a matter of law." *Id.* (citing *Iqbal*, 556 U.S. at 679).

In addition, where a defendant raises qualified immunity, the plaintiff "bears the burden of showing that [the] defendant[] [is] not entitled to qualified immunity." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016) (citing *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). A plaintiff can carry this burden at the pleading stage "by alleging facts [that] mak[e] out a plausible claim that [the] defendant['s] conduct violated a constitutional right that was clearly established at the time of the violation." *Id.* And "although an officer's 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point,' that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (alteration in original) (citation omitted) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)) (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)). Thus, while a qualified immunity defense can be raised on a motion to dismiss, *see Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001), "it is generally inappropriate for a district court to grant [such a motion] . . . on the basis of qualified immunity." *Wesley*, 779 F.3d at 433.

### ANALYSIS

Plaintiffs' Second Amended Complaint [46] includes four claims under 42 U.S.C. § 1983: excessive force (as to Officers Reed, Jones, and White), illegal search (as to all officers), unreasonable seizure (as to all officers), and municipal liability

5

(as to the City of Flint). Defendants concede that Plaintiffs have plausibly stated 1) an excessive force claim against Officers Reed, Jones, and White 2) an unreasonable seizure claim for the allegedly unlawful traffic stop against Officers Reed, Jones, Matteson, and VanKeuren, and 3) an unreasonable seizure claim for the allegedly unlawful arrest against and Officers Matteson and VanKeuren. (ECF No. 20, PageID.698; ECF No. 45). Defendants argue, however, that the remainder of Plaintiffs claims should be dismissed. (ECF No. 20, PageID.698).

   I.   **Unlawful Search (Count II)**

Plaintiffs raise two distinct theories of unlawful search. First, Plaintiffs allege that Officers VanKeuren and Matteson knowingly obtained the warrant without probable cause. Second, Plaintiffs allege that even if the warrant was valid, the destructive manner in which the search was conducted was unreasonable.

   A.   <u>Plaintiffs Plausibly Allege that Officers VanKeuren and Matteson Made and Relied Upon a Materially False Representation in Procuring and Executing the Warrant</u>

Defendants first argue that Plaintiffs' allegations about false representations in the warrant affidavit are too conclusory to satisfy FED. R. CIV. P. 9(b) and do not amount to the "substantial preliminary showing" required by *Franks v. Delaware*, 438 U.S. 154, 155 (1978). But Defendants do not cite, and the Court cannot locate, any authority for the proposition that the heightened pleading requirements of Rule 9(b) apply to *Franks* claims brought under § 1983. *Cf., e.g.*, *Bailey v. City of Ann*

6

*Arbor*, 860 F.3d 382, 385 (6th Cir. 2017) (analyzing similar claims under Rule 12(b)(6) alone). Likewise, although Defendants are correct that a § 1983 plaintiff alleging a *Franks* violation must make a "substantial showing" of a "deliberate falsehood or . . . reckless disregard for the truth" to defeat qualified immunity, *Vakilian*, 335 F.3d at 517, the plaintiff need not do so at the pleading stage. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

"Police officers normally receive qualified immunity if they rely on a judicially secured warrant." *Bailey*, 860 F.3d at 385 (citing *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005)). But "[e]ven if the warrant is sufficient, . . . [a] defendant [officer] cannot rely on it if he knowingly made false statements in the affidavit such that, but for those falsities, the warrant would not have been issued." *Hale*, 396 F.3d at 726 (6th Cir. 2005) (citing *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1244 (6th Cir. 1989)). Likewise, a defendant officer cannot rely upon a warrant that they know or should have known was obtained through another officer's deliberate falsehoods. *See McCallum v. Geelhood*, No. 15-12676, 2017 U.S. Dist. LEXIS 48824, at *18 (E.D. Mich. Mar. 31, 2017). In either case, the officer's "reliance is unreasonable, and [search or seizure] . . . pursuant to such deceptive practices violates the Fourth Amendment." *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006).

> Thus, a plaintiff may challenge an officer's qualified-immunity defense in a civil-rights case by showing that (1) the officer's warrant affidavit contained a false statement or omission that was made either deliberately or with reckless disregard for the truth; and (2) that the

7

> false statement or omission was material to the finding of probable cause. *See Vakilian*[, 335 F.3d at 517]; *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Once a plaintiff makes this showing, the Fourth Amendment requires the court to 'set aside the [false] statements and . . . determine whether the affidavit is still sufficient to establish probable cause.' *Sykes*, 625 F.3d at 305. If not, any search performed pursuant to the warrant was unlawful, in clear violation of the Fourth Amendment. *See Franks*, 438 U.S. at 156.

*McCallum v. Geelhood*, 742 F. App'x 985, 991 (6th Cir. 2018) (second alteration in original). At the pleading stage, this requires Plaintiffs to "identify [specific] statements in the warrant affidavit that are alleged to be false or materially incomplete." *Meeks v. Larsen*, 611 F. App'x 277, 284 (6th Cir. 2015).

Here, Plaintiffs allege that "the confidential informant did not perform a controlled buy at [their] home prior to [Officer VanKeuren] securing the search warrant." (Sec. Am. Compl. ¶ 23). This claim satisfies Plaintiffs' burden at the pleading stage. *See Meeks*, 611 F. App'x at 284.

Accordingly, the Court must "set aside" the portions of Officer VanKeuren's affidavit that discuss the controlled purchase, and look to what remains of the document to see whether a basis for probable cause still exists. *Sykes*, 625 F.3d at 305. After excising the allegedly false allegations, only three elements of the affidavit remain: 1) the tip from the CI that "[Plaintiffs' residence] . . . [was] a location from which narcotics could be purchased," 2) the observation of "large amounts of foot [and vehicle] traffic coming to and leaving [Plaintiffs'] residence," and 3) the CI's track record of helping with investigations over a one-month period.

(ECF No. 20-1, PageID.716). But even when grouped together under the totality of the circumstances, *see Illinois v. Gates*, 462 U.S. 213 (1983), these allegations would not have been adequate to support a determination of probable cause.

"Probable cause exists 'when there is a "fair probability" . . . that contraband or evidence of a crime will be found in a particular place.'" *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (quoting *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003)). "[T]wo factors . . . are critical in determining whether an affidavit based on a confidential informant's tip provides a substantial basis for finding probable cause: (1) an explicit and detailed description of alleged wrongdoing; and (2) corroboration of the tip through . . . independent investigative work." *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) (citing *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996)); *see United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004) (explaining that this latter factor is less important where the affiant alleges that the CI has a demonstrated track record of providing accurate information (citing *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc); *United States v. Smith*, 182 F.3d 473, 478-79 (6th Cir. 1999))).

With these factors in mind, although it is clear that the affidavit could support a finding that the CI was reliable, the vague tip that "narcotics could be purchased" at Plaintiffs' residence does not amount to "a particular crime and particular evidence," *Allen*, 211 F.3d at 976, let alone the "explicit and detailed description of

9

alleged wrongdoing" preferred by the Sixth Circuit. *See Martin*, 526 F.3d 926, 936 (citing *Weaver*, 99 F.3d at 1377). As such, it would not support a finding of probable cause, even when viewed alongside the allegations of heavy foot and vehicle traffic.

Accordingly, Plaintiffs have plausibly alleged that Officer VanKeuren knowingly made material misrepresentations about a controlled purchase in order to procure a warrant. Additionally, if the controlled purchase was fabricated, as Plaintiffs allege, Officer Matteson, who Officer VanKeuren claimed tested the methamphetamine from that purchase, would have known the warrant affidavit contained falsehoods. In other words, even though Officer Matteson was not the affiant for the search warrant, Plaintiffs have also plausibly alleged that he was on notice regarding the false representation, and that he could not have reasonably believed the warrant was valid. Accordingly, at least for the purposes of a motion to dismiss, Officers VanKeuren and Matteson are not entitled to qualified immunity, since it is clearly established that . . . relying on warrants obtained through false or misleading statements is unconstitutional." *McCallum*, 2017 U.S. Dist. LEXIS 48824, at *18 (citing *Sykes*, 625 F.3d at 305).

> B. <u>Plaintiffs Plausibly Allege that the Manner in Which the Search Was Executed Was Unreasonable</u>

"To satisfy the [Fourth Amendment's] Reasonableness Clause, officers not only must obtain a valid warrant but . . . must conduct the[ir] search in a reasonable manner." *Baranski v. Fifteen Unknown Agents of the BATF*, 452 F.3d 433, 445 (6th

10

Cir. 2006) (en banc) (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)). "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). Accordingly, where a plaintiff brings a § 1983 claim based on the unreasonable manner in which a warrant was executed, they can survive dismissal if they have plausibly alleged facts from which a jury could conclude that the manner of the search was not "reasonably necessary to effectively execute [the] . . . warrant." *Hill v. McIntyre*, 884 F.2d 271, 278 (6th Cir. 1989).

Here, Plaintiffs allege that "each of the individually-named Defendants . . . destroy[ed] [Plaintiffs'] personal property . . . includ[ing], but . . . not limited to the following: breaking their home security system; destroying their clothes and furniture; clogging their drains; breaking their dishes and cupboards; and spoiling their food." (Sec. Am. Compl. ¶ 15). Plaintiffs also allege that "[t]he individually-named Defendants . . . threaten[ed] . . . [to] tear[] apart [Plaintiffs'] house and tak[e] away their daughter if they did not tell [Defendants] where the drugs were." (*Id.* ¶ 14). Defendants argue that the non-affiant officers were entitled to rely upon Officer VanKeuren's warrant as "facially valid" and that allegations against Officers Urquhart, White, and Petrich lack specificity.

11

The first of Defendants' arguments is inapposite because, as described above, "[e]ven when officers have complied with the Warrant Clause," the manner of the search is "not insulate[d] . . . from challenge." *Baranski*, 452 F.3d at 445. With respect to the second argument, Defendants are correct that under certain circumstances, a complaint's categorical reference to "defendants" may be insufficient to "give [each] defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see, e.g.*, *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (dismissing *Bivens* claim where complaint failed to differentiate between the conduct of state and federal defendants, even though only the latter were subject to *Bivens* liability). However, this rule only applies to situations where the complaint fails to distinguish which *claims* apply to which defendants. *See, e.g.*, *Micks-Harm v. Nichols*, No. 18-12634, 2019 U.S. Dist. LEXIS 168202, at *16 (E.D. Mich. Sep. 30, 2019) (dismissing defendants where "the allegations . . . d[id] not specifically identify which . . . [d]efendant violated which claim"), *aff'd*, 2021 U.S. App. LEXIS 15487, at *31 (6th Cir. May 24, 2021) (citing *Marcilis*, 693 F.3d at 596).

Plaintiffs' allegations make clear that each Defendant is subject to an unreasonable search claim for the destruction of Plaintiffs' property during the course of the search. (Sec. Am. Compl. ¶ 15). Accordingly, even though Plaintiffs

12

cannot yet identify which Defendant destroyed which piece of property, Defendants have been provided adequate notice of the claims against them. *See, e.g.*, *Glass v. Franklin Cnty.*, No. 3:19-cv-00051-GFVT, 2020 U.S. Dist. LEXIS 102586, at *11-12 (E.D. Ky. June 10, 2020) (distinguishing *Marcilis* on similar grounds).

## II. Unreasonable Seizure (Count III)

Plaintiffs' unreasonable seizure claim is divided into three parts: detention during the traffic stop by Officers Reed, Jones, Matteson, and VanKeuren (Count III(a)), detention in the living room by all officers (Count III(b), and false arrest by Officers Matteson and VanKeuren (Count III(c)). (Sec. Am. Compl. ¶ 42). Because Defendants concede that Plaintiffs satisfy their pleading burden with respect to Counts III(a) and III(c), the only issue that remains is the living room detention.

As is the case with searches, officers receive qualified immunity for seizures made in reasonable reliance upon a facially valid warrant. *Marvaso v. Sanchez*, 971 F.3d 599, 610 (6th Cir. 2020). But such seizures must still be executed reasonably. *See, e.g.*, *Hill*, 884 F.2d at 278. The Supreme Court has held that police "officers executing a search warrant for contraband" can reasonably "detain the occupants of the premises while a proper search is conducted." *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (internal quotation marks omitted) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). The use of handcuffs, although a separate intrusion, is likewise reasonable where multiple individuals must be detained or where the warrant

13

authorizes a search for weapons. *See id.* at 99 (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

Here, because Plaintiffs allege no facts that would transform an otherwise reasonable seizure into an unreasonable seizure, Plaintiffs' claim for an unreasonable living room detention will be dismissed as to all officers except VanKeuren and Matteson, who, according to Plaintiffs' allegations, could not have reasonably relied upon the warrant.

### III. Municipal Liability (Count IV)

Plaintiff's final claim is against the City of Flint, however, "[a] municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Rather, to prevail on a municipal liability claim, a plaintiff must "show[] that the municipality had a 'policy or custom' that caused the violation of [the plaintiff's] rights." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 581 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694); *see Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (noting that the policy or custom "must be 'the moving force of the constitutional violation'" (quoting *Monell*, 436 U.S. at 694)).

> A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a

14

> policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Here, Plaintiffs allege liability under the third theory.

To ultimately prevail on a claim for failure to train or supervise, a plaintiff is required to prove that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). At the pleading stage, this typically requires a plaintiff to "allege 'prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training [or supervision] in this particular area was deficient and likely to cause injury.'" *Arsan v. Keller*, 784 F. App'x 900, 916 (6th Cir. 2019) (quoting *Burgess*, 735 F.3d at 478)). Plaintiffs do not do this here, but instead attempt to proceed under a "single-incident liability" theory. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

In *City of Canton*, the Supreme Court explained "that in light of the duties assigned to specific . . . employees[,] the need for more or different training [may be] so obvious, and the inadequacy so likely to result in the violation of constitutional

15

rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* In other words, "a plaintiff can show deliberate indifference based on 'single-incident liability' if the risk of the constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference for the city to fail to prepare [its employees] for it." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (citing *Connick v. Thompson*, 563 U.S. 51, 63 (2011)).

Ultimately, however, Plaintiffs allege no facts in support of a single-incident liability theory. Their allegations are entirely conclusory. (Sec. Am. Compl. ¶ 48). In this respect, Plaintiff's case differs from other cases in which single-incident claims have been allowed to proceed past a motion to dismiss. *See, e.g.*, *Preston v. Cnty. of Macomb*, No. 18-12158, 2019 U.S. Dist. LEXIS 123142, at *38 (E.D. Mich. July 24, 2019) (denying motion to dismiss where the plaintiff alleged that jail nurses "receive less than two weeks of shadowing other nursing staff and that they received no training related to emergencies or acute conditions"). Accordingly, Plaintiffs' *Monell* claim must be dismissed.

## Conclusion

**IT IS ORDERED** that Defendants' Motion to Dismiss [20] is **GRANTED in part and DENIED in part**.

16

Count I may proceed against Officers Reed, Jones, and White in their individual capacities. Count II may proceed against all officers in their individual capacities. Count III(b) is **DISMISSED** as to Officers Reed, Jones, White, Urquhart, and Petrich, but may proceed against Officers VanKeuren and Matteson in their individual capacities. Count IV is **DISMISSED**.

**SO ORDERED.**

Dated: September 10, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge